EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ADOLFO BURGOS, acusado y apelante.

Núm. 15160.—*Sometido:* Diciembre 3, 1951. *Resuelto:* Febrero 29, 1952.

*Hipólito Marcano* y *Juan Marcano*, abogados del apelante; *Hon. Procurador General Víctor Gutiérrez Franqui, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Frank Vizcarrondo Vivas, Fiscal Auxiliar,* abogados de El Pueblo apelado.

*Per Curiam:* El apelante fué convicto por la Sección de Humacao del Tribunal de Distrito de Puerto Rico de una infracción a la Ley de Bolita, consistente en tener en su posesión "listas de números de tres guarismos, con unidad a la derecha." Fué sentenciado a una pena de seis meses de cárcel. En apelación sostiene que fué error del tribunal inferior (1) declarar sin lugar una moción sobre supresión de evidencia y admitir la misma; (2) sostener la validez de la orden de allanamiento en virtud de la cual se ocupó aquélla; (3) negarse a tomar conocimiento judicial de la colindancia o límite territorial de los barrios Ceiba Norte y Ceiba Sur del término municipal de Juncos dentro de la jurisdicción del tribunal, y (4) dictar sentencia condenatoria, por ser ésta contraria a y no estar sostenida por la prueba ofrecida.

Los tres primeros errores giran en torno de la legalidad del allanamiento en virtud del cual se ocupó la evidencia inculpatoria. Los consideraremos conjuntamente.

El primer fundamento que se adujo en el tribunal inferior atacando la validez de la orden de allanamiento fué el de que a pesar de que la misma fué dirigida "a cualquier Agente de orden público en el distrito de San Lorenzo, P. R.", fué diligenciada, sin embargo, por un Cabo de la Policía Insular del distrito de Caguas, acompañado de otros oficiales

y policías del mismo precinto o distrito de Caguas, habiéndose violado en esa forma las disposiciones de los artículos 506 y 508 del Código de Enjuiciamiento Criminal. (¹)

La orden de allanamiento fué expedida por el Juez del Tribunal Municipal de Puerto Rico, Sala de San Lorenzo, el día 5 de julio de 1950, en virtud de declaración que ante él prestó y juró el Cabo de la Policía Insular Jaime Torres ese mismo día en San Lorenzo. Fué por él diligenciada el día 9, jurando el diligenciado el propio Cabo Torres en esa misma fecha ante el mismo juez municipal.

La propia declaración del Cabo Torres sobre ese extremo dejó establecido que el referido agente de orden público prestaba servicios en Caguas, pero que aun cuando no estaba asignado *permanentemente* al distrito policíaco de San Lorenzo, para esa fecha "prestaba servicios en todo el distrito judicial de Caguas", incluyendo, además de Caguas, "Cidra, Aguas Buenas, San Lorenzo." En consecuencia, no estando el radio de acción de un policía o detective circunscrito a un determinado municipio o distrito, pudiendo prestar servicios en cualquier sitio de Puerto Rico, bien con carácter permanente o temporero, *Pueblo* v. *Aybar*, 68 D.P.R. 6; *Pueblo* v. *Tonje*, 71 D.P.R. 317, la orden estuvo bien diligenciada y por persona con autoridad para ello según los artículos 506 y 508 del Código de Enjuiciamiento Criminal ya citados. Aparte de esto, desde el 1ro. de julio de 1950 Puerto Rico es un solo distrito judicial y el tribunal municipal uno solo. Ley

(¹) Artículo 506.—"Si en vista de ellas el juez de paz quedare plenamente convencido de que hay fundamento para la petición, o causas legítimas para creer en la existencia de aquellos fundamentos, debe librar una orden de allanamiento, que firmará con el nombre de su cargo oficial y la dirigirá a un agente de orden público de su propio distrito, mandándole que proceda inmediatamente a registrar la persona o sitio que se indica, en busca de la propiedad especificada, la cual se traerá a presencia del juez de paz."

Artículo 508.—"Una orden de registro o allanamiento puede en todos los casos ser ejecutada por cualquiera de los agentes de la autoridad que en las instrucciones que contenga se mencionen, pero nunca por ninguna otra persona, salvo la que en su auxilio haya requerido el agente de la autoridad, quien ha de estar presente al dar cumplimiento a la orden."

Orgánica de la Judicatura, núm. 432 de 5 de mayo de 1950; *Figueroa* v. *Tribunal de Distrito*, 72 D.P.R. 24.

El segundo fundamento que se adujo para la nulidad de la orden fué el de que en la misma se instruyó al agente de orden público a quien iba dirigida a registrar *la casa residencia de Adolfo Burgos ubicada en el barrio Ceiba Sur de Juncos*, y la policía, sin embargo, procedió a registrar *la casa residencia de Esteban Lozada ubicada en el barrio Ceiba Norte de Juncos*, donde el acusado residía temporalmente.

En la orden de allanamiento se describió así la casa a ser allanada:

"Casa construída de madera y techada de zinc, de una sola planta, pintada de color azul claro, con una puerta y una ventana al frente, sin balcón, enclavada en un predio de terreno propiedad de Esteban Lozada Merced de Juncos, situada en orilla de la carretera que conduce de Juncos a Las Piedras, Puerto Rico y tiene el frente para dicha carretera, y dicha casa del querellado colinda por el lado Oeste con una casa construída de madera y techada de zinc, de una sola planta, ocupada por Juan Reyes y su familia, y por el lado Este con una casa construída de madera con balcón de concreto por el lado Este y Sur pintada de color verde y ocupada por Landelino Lebrón y su familia."

Para substanciar este segundo fundamento de nulidad, el acusado presentó prueba para demostrar que la casa allanada estaba situada en el barrio Ceiba Norte, a la izquierda de la carretera yendo de Juncos a Las Piedras; que en ese sitio la carretera era la colindancia entre los dos barrios, y que la casa *propiedad* del acusado, en la que éste había residido hasta que se mudó a la casa de su cuñado Esteban Lozada en el barrio Ceiba Norte, quedaba en el lado opuesto de la carretera, en el barrio Ceiba Sur.

Sin embargo, el Cabo Torres, que fué uno de los agentes que llevó a cabo el allanamiento, declaró, en cuanto a ese extremo, que la casa que fué registrada, donde residía el acusado, estaba en el barrio Ceiba Sur, de Juncos y que estaba seguro de eso porque había trabajado allí tres años de guardia

y conocía todos los barrios; que el acusado vivía anteriormente *en el mismo barrio Ceiba Sur*, en otro sitio, pero que "luego el Sr. Esteban Lozada compró otro pedazo de terreno en el mismo sitio más abajo, y a él fué a vivir."

Pero independientemente del conflicto de prueba sobre dicho extremo—que fué dirimido por el juez sentenciador adversamente al apelante—el hecho de si la casa allanada radicaba en el barrio Ceiba Norte o en el barrio Ceiba Sur, no afecta la validez del registro efectuado, cuando la descripción de dicha casa y su localización y colindancias fueron tan detalladas y específicas, que proporcionaba el elemento de certeza necesario para saber la propiedad a ser allanada, ya que, sin lugar a dudas, la orden iba dirigida a registrar esa casa, enclavada en terrenos de Esteban Lozada, y ninguna otra, no dejando margen alguno al agente de orden público para decidir en cuanto a la casa a ser registrada. *Steele* v. *United States No. 1*, 267 U. S. 498, 503; 74 A.L.R. 1498. Véanse además *Johnson* v. *United States*, 46 F.2d 7; *French* v. *Commonwealth*, 300 S.W. 902; *French* v. *State*, 169 N.E. 338 y *Sparks* v. *United States*, 90 F.2d 61.

No cometió el tribunal inferior los tres primeros errores señalados. Tampoco el cuarto.

La prueba de cargo, que consistió del testimonio de los dos policías que llevaron a cabo el registro, fué al efecto de que al verificar éste encontraron, dentro de un zapato de mujer que estaba en una zapatera en uno de los dormitorios, 14 listas de números de bolita, una libreta con listas de números de bolita y una tarjeta con números de bolita al dorso. Este material se admitió en evidencia. (Las listas de números, según aparecen en la transcripción de evidencia, son material típico de bolita, con las tres cifras, el guión y la unidad a la derecha, y en adición—en algunas de ellas— nombres de personas y al lado la palabra "Pagó", y a veces la letra "P", así como cantidades sumadas en las distintas hojas y luego la suma total correspondiente a cada persona.)

El acusado hacía dos o tres meses que vivía en esa casa. El dueño de ella, Esteban Lozada—un bolitero, cuñado del acusado—nunca había habitado esa propiedad, ya que siempre había vivido en el pueblo. El acusado había sido visto en muchas ocasiones en dicha casa por el Cabo Torres, y la última vez que lo vió fué como dos o tres días antes del allanamiento, ocasión en que vió al acusado reunido en ella con un grupo de personas que él, Torres, sabía que eran boliteros, manipulando material de bolita.

La prueba de defensa fué al efecto de que el acusado era persona de buena reputación y trabajador, que vivía de su trabajo, y que solamente hacía unos días que vivía esa casa, propiedad de su cuñado Esteban Lozada, por haber tenido necesidad de desocupar la suya para hacerle unas reparaciones. El material de bolita, según Lozada, pertenecía a éste, declarando además que él vivía esa casa antes de ocuparla el acusado y que en ella manipuló algunas veces material de bolita, habiéndosele quedado las listas y números de bolitas ocupados por la policía en unos zapatos de su mujer, en la casa, pero que el acusado no tenía conocimiento de ello.

No podemos convenir con el apelante en que dicha prueba es insuficiente ni que el juez sentenciador cometió manifiesto error en su apreciación.

*La sentencia será confirmada.*